IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROBERT ALLEN RABE | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | |
| | § | NO. 3-07-CV-1764-B |
| NATHANIEL QUARTERMAN, Director | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division | § | |
| | § | |
| Respondent. | § | |

**FINDINGS AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Petitioner Robert Allen Rabe, a Texas prisoner, has filed an application for writ of habeas

corpus pursuant to 28 U.S.C. § 2254.   For the reasons stated herein, the application should be

denied.

I.

A jury convicted petitioner of aggravated robbery with a deadly weapon.   Punishment,

enhanced by two prior felony convictions, was assessed at 48 years confinement.   His conviction and

sentence were affirmed on direct appeal.   *Rabe v. State*, No. 08-03-00153-CR, 2004 WL 3017682

(Tex. App.--El Paso, Dec. 30, 2004, pet. ref'd).   Petitioner also challenged his conviction on state

collateral review.   The Texas Court of Criminal Appeals denied relief without written order.   *Ex

parte Rabe*, No. WR-21,056-02 (Tex. Crim. App. Jan. 10, 2007).   Petitioner then filed this action

in federal district court.

II.

In his sole ground for relief, petitioner contends that he received ineffective assistance of counsel because his attorney: (1) did not subpoena three alibi witnesses; and (2) failed to investigate or present evidence that one of the suspects depicted on the surveillance video did not have tattoos on his arms, whereas petitioner has tattoos on both of his forearms and both of his biceps.[1]

A.

The Sixth Amendment to the United States Constitution guarantees a defendant reasonably effective assistance of counsel at all critical stages of a criminal proceeding. *See Cuyler v. Sullivan,* 446 U.S. 335, 344, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333 (1980). To prevail on an ineffective assistance of counsel claim, a habeas petitioner must satisfy the two-prong test established in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the petitioner must demonstrate that the performance of his attorney fell below an objective standard of reasonable professional conduct. *Id.*, 104 S.Ct. at 2064. Second, the petitioner must prove that he was prejudiced by his attorney's substandard performance. *Id.* at 2067. Prejudice results when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 2068.

Where, as here, a state court has already rejected an ineffective assistance of counsel claim, a federal court may grant habeas relief only if the state court adjudication:

---

[1] Petitioner raised at least 11 claims in a *pro se* application for writ of habeas corpus filed on October 16, 2007. (*See* Doc. #1). Thereafter, the court appointed the Federal Public Defender to represent petitioner and directed counsel to file an amended pleading that contains "all grounds upon which petitioner challenges his state conviction[.]" (*See* Doc. #22 at 6). Consistent with Fed. R. Civ. P. 15(a), petitioner and his attorney were told that the amended pleading "will supersede any *pro se* pleadings previously filed by petitioner." (*Id.*); *see also Boelens v. Redman Homes, Inc.,* 759 F.2d 504, 508 (5th Cir. 1985) (noting that amended complaint supersedes an original pleading and "renders it of no legal effect"). The court therefore considers only the single ground raised by petitioner in his amended writ filed on March 9, 2009. (*See* Doc. #29).

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Williams v. Taylor*, 529 U.S. 362, 411-13, 120 S.Ct. 1495, 1522-24, 146 L.Ed.2d 389 (2000).  A state court decision is contrary to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir.), *cert. denied*, 124 S.Ct. 2812 (2004), *citing Williams*, 120 S.Ct. at 1519-20.  A decision constitutes an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 120 S.Ct. at 1523. To be unreasonable, the application of clearly established federal law must be more than merely incorrect. *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001).  The standard is one of "objective reasonableness." *Montoya v. Johnson*, 226 F.3d 399, 403-04 (5th Cir. 2000), *cert. denied*, 121 S.Ct. 2220 (2001), *citing Williams*, 120 S.Ct. at 1521-22 (O'Connor, J., concurring).    Factual determinations made by state courts are presumed to be correct and are unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## B.

Petitioner was charged with the armed robbery of a Centennial liquor store, which allegedly occurred on August 8, 2002. (*See* St. App. Tr. at 2; SF-IV at 7).  At trial, the case against petitioner

was based entirely on the testimony of Mark Nilan, the store clerk. Nilan testified that his store was robbed by two African-American males and one white male shortly after 2:00 p.m. in the afternoon. (*See* SF-IV at 6-10). About three weeks after the robbery, Nilan identified petitioner as one of the suspects from a six-person photo line-up. (*Id.* at 23-26, 35). Nilan also identified petitioner at trial as one of the men who robbed his store. (*Id.* at 10). Although Nilan testified on direct examination that he was "absolutely positive" that petitioner was involved in the robbery, (*see id.* at 27), he admitted telling defense counsel before the trial that he was unsure whether he had identified the right person from the photo line-up. (*Id.* at 70-71). There also were other reasons for the jury to question Nilan's eyewitness identification. James Dupuch, a police officer who investigated the robbery, described Nilan as a "frail older gentleman" who was "nervous" and "shaky." (*Id.* at 49). Nilan initially told the police that the white suspect had brown hair with no facial hair, (*see id.* at 45, 48-49, 53), but later described the robber as having "dark reddish hair" with a "scruffy" appearance. (*Id.* at 42). At trial, Nilan testified that the white suspect carried a silver, medium-caliber automatic handgun. (*Id.* at 18). However, on cross-examination, Nilan admitted that he was looking down most of the time during the robbery and could not remember whether the gun was a revolver or a semi-automatic. (*Id.* at 66, 69). Nor could Nilan recall other details about the robbery, such as whether he had told the police that one of the African-American suspects was wearing jean shorts and a plaid shirt. (*Id.* at 68-69). When asked by defense counsel whether he felt pressure to identify petitioner as one of the men who robbed his store, Nilan responded, "I did up until the first time I saw him in court when I knew it was him." (*Id.* at 76).

The only other direct evidence of the robbery was a surveillance video. (*See* St. Exh. 1). The video showed a white male, identified by Nilan as petitioner, holding a gun in his right hand. (*See id.* at 29). However, petitioner's sister, Sandra Geer, testified that petitioner is left-handed. (*Id.* at

77).  Unlike petitioner, who has tattoos on both of his forearms and both of his biceps, the white

suspect depicted in the video did not appear to have any tattoos on his arms.  Nor did Nilan tell the

police that the white suspect had tattoos.  Despite the potential significance of this evidence, defense

counsel did not bring up the fact that petitioner had tattoos until the punishment hearing.  (*See* SF-V

at 19-20).  While the state appeals court was "disturbed by counsel's untimely introduction of

potentially exculpating evidence," it determined that petitioner was not prejudiced by the deficient

performance of his attorney:

> It is evident in the record that counsel filed appropriate motions,
> vigorously cross-examined the State's witnesses, and offered evidence
> that appellant is left-handed.  The complainant unhesitatingly
> identified appellant as one of the robbers, and the jury was able to
> view the videotape during their deliberations and to compare the
> images from that video to appellant's face.  From the sentence they
> imposed, forty-eight years in prison, it is apparent that they were not
> persuaded to impose a lighter sentence based on the testimony
> concerning the tattoos.  Therefore, we hold that appellant cannot show
> that the outcome of his trial would have been different but for
> counsel's error.

*Rabe*, 2004 WL 3017682 at *2.  Similarly, the state habeas court found that petitioner was not

entitled to post-conviction relief, even though counsel candidly admitted that he "probably dropped

the ball" for not discovering the tattoos earlier in the trial.  *See Ex parte Rabe*, WR-21,056-02, Tr.

at 57.

Troubled by the state court's failure to adequately address counsel's concession with respect

to a potential "tattoo defense," as well as other inconsistencies in the record, this court scheduled an

evidentiary hearing to fully explore the factual basis of petitioner's ineffective assistance of counsel

claim.  (*See* Doc. #22).  Respondent objected to the hearing on the ground that petitioner had not

adequately developed the factual basis of his claim in state court.  The court held an evidentiary

hearing on May 15, 2009, and took respondent's objection under advisement.

1.

Under the federal habeas statute, 28 U.S.C. § 2254(e)(2), a federal district court may not hold

an evidentiary hearing on a claim for habeas relief if the petitioner failed to develop the factual basis

of the claim in the state court proceedings, unless:

> (A)     the claim relies on--
>
> > (i)  a new rule of constitutional law, made retroactive to
> > cases on collateral review by the Supreme Court, that was
> > previously unavailable; or
> >
> > (ii) a factual predicate that could not have been previously
> > discovered through the exercise of due diligence; and
>
> (B)     the facts underlying the claim would be sufficient to establish
> by clear and convincing evidence that but for constitutional error, no
> reasonable factfinder would have found the applicant guilty of the
> underlying offense.

28 U.S.C. § 2254(e)(2). "[A] failure to develop the factual basis of a claim is not established unless

there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel."

*Williams v. Taylor*, 529 U.S. 420, 432, 120 S.Ct. 1479, 1488, 146 L.Ed.2d 435 (2000).  At a

minimum, diligence usually requires the prisoner to seek an evidentiary hearing in state court in the

manner prescribed by state law. *Id.*, 120 S.Ct. at 1490.  When an evidentiary hearing is not barred

by section 2254(e)(2), "the decision to grant such a hearing rests in the discretion of the district

court." *Schriro v. Landrigan*, 550 U.S. 465, 468, 127 S.Ct. 1933, 1937, 167 L.Ed.2d 836 (2007).

In exercising that discretion, "the judge must review the answer [and] any transcripts and records of

state-court proceedings . . . to determine whether an evidentiary hearing is warranted." *Hall v.*

*Quarterman*, 534 F.3d 365, 368 (5th Cir. 2008), *quoting* Rule 8(a), Rules Governing Section 2254

Cases (2004).  The court also must "consider whether such a hearing could enable an applicant to

prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Id.*, *quoting Schriro*, 127 S.Ct. at 1940.

Petitioner tacitly concedes that he did not request an evidentiary hearing in the state habeas court. (*See* Doc. #47 at 1-6). Nevertheless, petitioner insists that he is entitled to a federal evidentiary hearing because the affidavit submitted by his former attorney on state collateral review was inaccurate "to the point of exaggeration." (*Id.* at 3). In his affidavit, Michael A. Smith stated that he made numerous attempts to contact three alibi witness--Vincent Avalos, Jesse Diaz, and Ana Monsisvais. *Ex parte Rabe*, WR-21,056-02, Tr. at 57. Smith said that his investigator, Jay Monych, also tried to contact Diaz. *Id.* Although messages were left with the witnesses, Smith averred that the witnesses either never called back or were of no use to petitioner's case. *Id.* However, as petitioner proved at the evidentiary hearing, Smith's contemporaneous billing records show that he and his investigator made only one attempt to locate these witnesses prior to trial. (Evid. Hrg., Pet. Exh. 3). Because the state habeas court relied exclusively on Smith's inaccurate affidavit in denying post-conviction relief, petitioner argues that this court has discretion to conduct an evidentiary hearing on the claims raised in his federal writ.

The court initially observes that petitioner makes no attempt to justify his entitlement to an evidentiary hearing on his claim that counsel was ineffective for failing to present a "tattoo defense." And while there is some reason to question to accuracy of Smith's affidavit, petitioner also is to blame for failing to adequately develop the state habeas record. Petitioner did not obtain affidavits or statements from any of the potential alibi witnesses summarizing the substance of their missing testimony or demonstrating their willingness to testify at trial. Nor has petitioner shown that it would have been difficult or costly to obtain such affidavits in connection with the state habeas proceeding. Under these circumstances, it is doubtful whether a federal court even has discretion

to conduct an evidentiary hearing. *See Riddle v. Cockrell*, 288 F.3d 713, 719 (5th Cir.), *cert. denied*, 123 S.Ct. 420 (2002) (petitioner who failed to submit affidavit or request a hearing in state habeas court did not establish diligence required for an evidentiary hearing in federal court); *Dowthitt v. Johnson*, 230 F.3d 733, 758 (5th Cir. 2000), *cert. denied*, 121 S.Ct. 1250 (2001) (same as to petitioner who requested evidentiary hearing in state habeas court, but failed to present affidavits from witnesses allegedly willing to testify on his behalf and did not show that obtaining such affidavits would have been cost prohibitive). Notwithstanding this concern and respondent's objection, the court will consider the testimony of Vincent Avalos and Martha Avalos, the only two potential alibi witnesses who testified at the evidentiary hearing on May 15, 2009. The court makes this decision because, even with this testimony, petitioner has not shown that his attorney was ineffective for failing to subpoena these witnesses.

2.

At the evidentiary hearing, Martha Avalos testified that her husband, Vincent, hired petitioner to fix an air conditioner at their house in August 2002. Martha, who does not know petitioner, said that she paid him by check for the work on August 9, 2002. A record of that check was introduced into evidence at the hearing. (Evid. Hrg., Pet. Exh. 4). Vincent Avalos confirmed that he hired petitioner to work on his air conditioner, although he could not remember the exact date the repairs were made. Vincent said that petitioner reported for work by 8:00 or 8:30 in the morning, and would not have been paid until the work was completed. However, Vincent did not see petitioner again that day. Neither Martha nor Vincent were contacted by petitioner's attorney nor asked to testify at his trial.

Even if these witnesses were subpoenaed by defense counsel, there is no reason to believe that their testimony would have changed the outcome of the case. At most, Vincent Avalos placed

petitioner at his home around 8:00 or 8:30 in the morning.  Vincent did not see petitioner again that

day.  Martha Avalos never saw petitioner at her home.  Assuming that petitioner was at the Avalos

home on the morning of the robbery, neither Vincent nor Martha provide him with an alibi for the

Centennial liquor store robbery, which occurred around 2:00 in the afternoon.  It is difficult to see

how the testimony of these witnesses would have been helpful to the defense.

Nor has petitioner shown that counsel was ineffective for failing to subpoena the other

potential alibi witnesses, Ana Monsisvais and Jesse Diaz.  Nowhere in his state writ does petitioner

even mention Ana Monsisvais.  As a result, that aspect of his claim is unexhausted and procedurally

barred.  *See Garza v. Quarterman*, No. 4-06-CV-0291-Y, 2007 WL 1720004 at *6-7 (N.D. Tex. Jun.

14, 2007) (petitioner failed to exhaust state remedies with respect to claim that defense counsel was

ineffective for failing to subpoena witnesses who were not identified in state habeas application).

Although petitioner mentioned Jesse Diaz in his state writ, he did not obtain a statement from Diaz

until August 12, 2008--more than nine months after petitioner filed his federal writ.  In that

statement, Diaz wrote:

> I have personal knowledge and can give testimony to the following
> facts, on the date in question 8-8-02, I and Robert Allen Rabe were
> performing work to Vincent R. Avalos [sic] home at 2241 Anson Rd.,
> Dallas, Texas 75235.
>
> We spent approximately 6 hours at this home from 11;00am [sic] to
> 5;30pm [sic], to get the air conditioner back up and running, Mrs.
> Avalos was home while we were there.  And that Vincent Avalos
> paid for the work the following day 8-9-02.
>
> I have never been contacted for this statement, at the time of Robert
> Allen Rabe trial, I was told that Robert's defense attorney would get
> in contact with me, but he never did, at that time I lived at 7307
> Mohawk, Dallas, Texas, which is across the street from Robert's
> home at 7322 Mohawk.

> To the best of my knowledge no one ever got statements from myself
> or Vincent Avalos or his wife Marta [sic] Avalos, she was there with
> us all afternoon.

(Doc. #20, Exh. 1).[2]  While this testimony, if believed, supports an alibi defense, petitioner has not

shown that Diaz was both available and willing to testify at his trial.  *See Day v. Quarterman*, 566

F.3d 527, 538 (5th Cir. 2009) (to prove that counsel was ineffective for failing to call a witness,

petitioner must demonstrate, *inter alia*, that the witness was available to testify at trial and would

have done so).  To the contrary, it appears that Diaz *was* subpoenaed to testify, but ignored the

subpoena.  In a letter to petitioner, Diaz explained:

> I was served a sapiena [sic] to go to court and testifie [sic] for you and
> it was for a Wednsday [sic] and I talked to your dad about it.  I was
> ready to go but a few days later your dad told me that it was postpone
> [sic] for another day.  And I just gotten [sic] a good job working
> construction in sherman [sic] . . . A week later I came from sherman
> [sic] to see my mom and the police came and took me to jail for
> failier [sic] to appear to [sic] court. I stayed 3 days in jail for that and
> when I came out of jail, I ask your dad why he told me that court was
> postpone [sic] when it wasn't and he told me it was!

(Doc. #20, Exh. 2).  Even if Diaz was not contacted directly by petitioner's attorney, it appears that

he was subpoenaed to testify at trial.  That Diaz chose to ignore the subpoena is not attributable to

any fault on the part of defense counsel.  This ground for relief should be overruled.

3.

Petitioner also criticizes his attorney for failing to discover that the white suspect depicted

in the surveillance video did not have tattoos on his arms, whereas petitioner has tattoos on both of

---

[2] Petitioner submitted this statement, along with a letter from Diaz, as part of a motion for leave to expand the record filed on October 3, 2008.  (*See* Doc. #20).  Although the court initially denied the motion, (*see* Doc. #21), it now reconsiders that decision and expands the record to include these materials.  *See* Rule 7(a), Rules Governing Section 2254 Cases (2004) ("If the petition is not dismissed, the judge may direct the parties to expand the record by submitting additional materials relating to the petition.").

his forearms and biceps. "An attorney has a duty to independently investigate the charges against his client." *Bower v. Quarterman*, 497 F.3d 459, 467 (5th Cir. 2007), *cert. denied*, 128 S.Ct. 2051 (2008), *citing Wiggins v. Smith*, 539 U.S. 510, 524, 123 S.Ct. 2527, 2536-37, 156 L.Ed.2d 471 (2003). While the precise contours of a reasonable investigation are fact-specific and not clearly defined, the Fifth Circuit has held that "[i]nformed evaluation of potential defenses to criminal charges and meaningful discussion with one's client of the realities of his case are cornerstones of effective assistance of counsel." *Id.*, *quoting Washington v. Watkins*, 655 F.2d 1346, 1355 (5th Cir. 1981), *cert. denied*, 102 S.Ct. 2021 (1982). The reasonableness of an attorney's investigation depends, in part, on information supplied by the defendant. *Ransom v. Johnson*, 126 F.3d 716, 723 (5th Cir.), *cert. denied*, 118 S.Ct. 361 (1997); *see also Strickland*, 104 S.Ct. at 2066 ("The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions . . . In particular, what investigation decisions are reasonable depends critically on such information."). In order to establish that counsel was ineffective for failing to investigate, "a petitioner must allege with specificity what the investigation would have revealed and how it would have changed the outcome of the trial." *Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005).

On direct appeal, the state court was "disturbed" by counsel's failure to introduce "potentially exculpating evidence" that petitioner did not have tattoos on his arms, but ultimately concluded that he was not prejudiced thereby. *Rabe*, 2004 WL 3017682 at *2. The state habeas court reached the same conclusion. *Ex parte Rabe*, WR-21,056-02, Tr. at 54, ¶ 12. In rejecting petitioner's claim, the state habeas court acknowledged that defense counsel did not make any argument regarding petitioner's tattoos until the punishment hearing. However, the court noted that petitioner, who reviewed the surveillance video with his attorney several days before trial, neglected to mention that

the white suspect depicted in the video did not have tattoos on his arms. *Id.*, Tr. at 52, ¶ 7. The court also observed that the surveillance video was of "poor quality." *Id.* Based on those findings, the state habeas court concluded that petitioner did not receive ineffective assistance of counsel. *Id.*, Tr. at 54, ¶ 12.

After reviewing the surveillance video, the court is unable to conclude that the state court decision is unreasonable. The video is indeed of poor quality. Because of the camera angles and the grainy picture, it is impossible to discern whether the white suspect holding a gun on the store clerk has tattoos on either of his arms. (*See* SF-IV at 19, St. Exh. 1). Moreover, petitioner's tattoos, which he displayed to the court at the evidentiary hearing, are on the underside of his forearms and on his biceps. The surveillance video shows only the top of the suspect's forearms, and a short-sleeved shirt worn by the suspect covers most of his biceps. Even the enlarged still-shots taken from the video are not clear enough to enable the court, or a jury, to determine whether the suspect has tattoos. (*See* Evid. Hrg., Resp. Exh. 1-4). In light of this evidence, the court cannot say that counsel was ineffective for failing to present a "tattoo defense" during the guilt-innocence phase of the trial, or that petitioner was prejudiced thereby. *See, e.g. Brown v. McDonough*, No. 1-07-CV-00032-MP-AK, 2008 WL 4865991 at *13 (N.D. Fla. Nov. 6, 2008) (counsel was not ineffective for failing to introduce evidence that petitioner was wearing different clothing than suspect shown in surveillance video, where video was of such poor quality that it would not have raised a reasonable doubt as to guilt); *Stephens v. Crosby*, No. 8-03-CV-997T24-MAP, 2005 WL 1862723 at *4 (M.D. Fla. Jul. 28, 2005) (same as to counsel's failure to present evidence that burglary suspect shown in video was wearing different color shoes than petitioner was wearing at the time of his arrest, where color of shoes was not apparent from black-and-white video). This ground for relief should be overruled.

## **RECOMMENDATION**

Petitioner's application for writ of habeas corpus should be denied.

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party may file written objections to the recommendation within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). The failure to file written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED:  July 8, 2009.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE